UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**GEORGE S. GOULSON,**

        **Plaintiff,**          **CASE NUMBER: 05-71539**
                                    **HONORABLE VICTORIA A. ROBERTS**

v.

**YORKSHIRE GLOBAL RESTAURANTS, INC.,**
a Maryland corporation,

        **Defendant.**
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendant's and Plaintiff's Motions for Summary Judgment. The Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

**II.    BACKGROUND**

George S. Goulson ("Plaintiff") filed suit against his former employer Yorkshire Global Restaurants, Inc. ("Yorkshire" or "Defendant"). Plaintiff is a former executive of Yorkshire, the World's largest quick service restaurant company. Pursuant to stock incentive plans which were part of Restricted Stock Award Agreements ("RSA"), Yorkshire awarded Plaintiff 698 shares in restricted stock on March 26, 1998 and 500 shares on November 16, 1999. During the course of his employment, Plaintiff also received 2,391 stock options under two incentive stock option agreements ("ISOs").

1

In the Fall of 1999, Yorkshire acquired Long John Silver and A&W restaurants. As a result of the merger, Yorkshire closed A&W's Michigan office and combined its headquarters in one location -- Lexington, Kentucky. Unwilling to relocate, Plaintiff accepted a severance package. The severance package entitled Plaintiff to receive restricted stock in Yorkshire. This stock was to vest on his September 30, 2000 separation date, exercisable for two years. In addition, the severance package included the repurchase of 4,803 shares of preferred stock Plaintiff owned at $95.70 per share for a total of $459,647.10.

On September 25, 2000, Defendant amended that provision of the RSA which formerly provided that Defendant would bear the burden of paying the tax liability arising from accelerated vesting. Under the amendment, the employee bore the liability for taxes as soon as the shares vested, if the employee accepted the shares.

Plaintiff claims that he attempted to accept his restricted stock. He says he requested that Defendant purchase enough of his restricted stock to satisfy his tax liability. Defendant declined to do this because of the recent amendment. According to Defendant, Plaintiff declined to exercise his restricted stock because of the tax liability. Meanwhile, on August 1, 2000, Plaintiff, in consideration of Yorkshire's offer to re-purchase his shares of preferred stock, agreed to release Yorkshire from "any and all claims . . . arising out of or relating to [his] employment." Def. Ex. 10. Plaintiff did nothing in the ensuing 18 months to claim the restricted stock.

In March 2002, Yorkshire acquired Tricon Global Restaurants Inc., later known as Yum! Brands. In connection with the acquisition, Defendant, by outside counsel, sent documents to all persons who held options, shares or restricted shares of

2

Yorkshire stock. Included in the documents was an introductory memorandum, an Option Exercise Notice, and an attachment specifying each persons current stock holdings. The memorandum warned that the agreement should be read carefully and to call Defendant if there were any questions or inaccuracies. The Option Exercise Notice stated that "Attachment 1 to this Option Exercise Notice . . . contains a complete list of all my Options and Restricted Stock." Plaintiff's Attachment 1 stated that he owned 2,391 ISOs and zero shares of restricted stock. Def. Ex. 14.

Section 5 of the Option Exercise Notice, entitled "Release," contained an explicit irrevocable release specifically addressing all claims related to restricted stock, the Plan and any other stock rights:

> As of the Effective Time, in consideration of the vesting of the Options and Restricted Stock and the receipt of the amounts described in Paragraphs 1, 2, and 3 of this Exercise Notice, as applicable, I hereby forever and irrevocably release and discharge the Company, all Company Subsidiaries, each of their officers and directors, and any and all other persons who may have any liability with respect to the Plan, the Options or the Restricted Stock (the "Released Parties"), from any and all claims, rights, liabilities, losses, damages, demands, and causes of action whatsoever, known or unknown, suspected or unsuspected, which I may have relation to or with respect to (i) the Plan and any awards made to me thereunder, (ii) the Options or the Restricted Stock, or (iii) any other award made by the Company or any Company Subsidiary to me similar in nature to the Options of Restricted Stock or the other types of awards issuable under the Plan, except for the right to receive the amounts contemplated by Paragraphs 1, 2, and 3 of this Exercise Notice (to the extent applicable to me) . . ..

Plaintiff signed the Option Exercise Notice and returned it to Defendant. Plaintiff contends that he did not examine the schedule carefully, and signed the Option Exercise Notice without realizing that it omitted his 1,198 shares of restricted stock.

On April 29, 2002, Defendant sent Plaintiff a payment letter which referenced the

Notice and cash payments he would receive as consideration for signing the Option Exercise Notice. Again, the payment letter stated: "the undersigned hereby, . . ., irrevocably and unconditionally releases, acquits and forever discharges the Company [Yorkshire] . . ., from any and all . . .claims . . . arising out of, in connection with or related to the undersigned's status as a stockholder of the Company . . . ." Def. Ex. 15. Plaintiff signed the payment letter and later received $472,309.17 for his shares.

On July 27, 2004, Plaintiff claims he discovered the "error" on the schedule: the omission of his 1,198 shares of restricted stock. He wrote a letter to David Novak, Chairman of Yum! Brands, stating that Yum! Brands was required to purchase his shares of restricted stock for $253.90 per share during the May 2002 acquisition by Yum! Brands. Defendant's attorney sent a letter stating that Plaintiff chose not to exercise his restricted stock and that he released all claims when he signed the release on August 1, 2000. In response, Plaintiff filed this action. He argues that the release set forth in the Option Exercise Notice does not bar his claims.

### III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and

4

would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV. APPLICABLE LAW AND ANALYSIS

### A. Choice of Law

Preliminarily, Plaintiff argues that Defendant erroneously cites and relies on Michigan law. He contends that the Restricted Stock Agreements require the application of Maryland law. Plaintiff also seeks enforcement of the Option Exercise Notice, which does not contain a choice of law provision. Plaintiff cites cases from both Maryland and Michigan in support of his assertions.

On the other hand, Defendant argues that: (1) RSA choice of law provisions do not imply that Maryland law governs contract-related tort claims or releases; (2) there is no conflict between Maryland and Michigan law; and (3) Michigan law governs the releases because they were executed in Michigan.

In a diversity case, a district court "is obligated to apply the choice of law rules of the state in which it sits." *Security Ins. Co. v. Kevin Tucker & Assoc.*, 64 F.3d 1001, 1005 (6th Cir. 1995); *Mahne v. Ford Motor Co.,* 900 F.2d 83, 86 (6th Cir. 1990), *cert den.*, 498 U.S. 941 (1990). Therefore, the Court must look to Michigan choice-of-law rules.

Michigan adopted §§187 and 188 of the Restatement (Second) of Conflict of Laws. *Chrysler Corp. v. Skyline Indus. Serv., Inc.*, 448 Mich. 113, 124-125 (1995). Section 187(2) provides that parties will be bound by a contractual choice-of-law provision unless:

> a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

6

b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under §188,[1] would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws §187(2) (footnote added). *See also Kipin Indus., Inc. v. Van Deilen Int'l, Inc.,* 182 F.3d 490, 493 (6th Cir. 1999).

Neither party argues these elements. More importantly, the RSA and ISO agreements are not at issue. Defendant does not argue that Plaintiff was never entitled to his restricted shares of stock under the RSA. Instead, Defendant argues that Plaintiff's claims are barred by the release he executed in the Option Exercise Notice, which does not contain a choice of law provision. Likewise, Plaintiff's breach of contract claim pertains to the Option Exercise Notice.

---

[1]§188 states:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203

Courts construe releases consistent with general state law contract principles. *Barden Detroit Casino, L.L.C. v. City of Detroit*, 59 F.Supp.2d 641, 659 (E.D.Mich.1999)). Under Maryland law the effect of a release is governed by the law of the state in which it is executed. *See The Adour*, 21 F.2d 858 (D.Md. 1927). Because the Option Exercise Notice was executed in Michigan, the Court will apply Michigan law. The parties agree that the Maryland and Michigan laws governing Plaintiff's other claims are substantively the same. Therefore, the Court will analyze this entire motion under Michigan law.

### B.     Enforceability of Releases

Defendant argues that Plaintiff signed unambiguous releases which bar all of his claims.

Plaintiff acknowledges that he signed all three releases: the severance package letter on August 1, 2000, the Option Exercise Notice, and the Payment letter on April 29, 2002. Nevertheless, he argues they do not bar his claims because both parties made a mutual mistake regarding his ownership of restricted stock. He says the mistake made by both parties was the failure to: (1) examine the schedule and (2) discover the erroneous statement that he owned no restricted stock. Further, Plaintiff asserts that he never relinquished his ownership interest in writing as required under the RSA.

It is presumed that Plaintiff executed the releases knowingly and that the recited consideration was received. *Stefanac v. Cranbrook Educ. Cmty.*, 435 Mich. 155 (1990). Plaintiff must show by a preponderance of the evidence that the releases are unfair or incorrect on their face. *Id.* If the language of the releases are unambiguous, "the meaning of the language is a question of law, and the intent of the parties must be

8

discerned from the words used in the instrument." *Taggart v. United States*, 880 F.2d 867, 870 (6th Cir. 1989). If, however, the scope of the release agreements are ambiguous, "[t]he question . . . becomes one of determining the intention of the parties to the release." *Id.*

Notably, a release is not ambiguous simply because the parties disagree about its scope or meaning. *Gortney v. Norfolk & W. Ry.*, 216 Mich.App. 535, 541 (1996).

> The scope of a release is controlled by the intent of the parties as it is expressed in the release. If the text of the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. The fact that the parties dispute the meaning of the release does not, itself, establish an ambiguity. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation.

*Id.* (citations omitted).

There is no ambiguity in the language contained in the Option Exercise Notice Plaintiff signed. The language releasing "any and all claims" cannot be interpreted to exclude claims seeking to recover restricted stock.

Contrary to Plaintiff's contention, there was no mutual mistake in fact that renders the Option Exercise Notice unenforceable. Rather, it is capable of but one reasonable interpretation: that Plaintiff released all claims, including claims of ownership, in exchange for a substantial monetary consideration. Moreover, the Option Exercise Notice is only one of three releases Plaintiff signed waiving all claims related to his restricted stock. The severance package letter and payment letter contain similar release language.

In his deposition, Plaintiff admitted he had no reason to believe that he did not read the entire Option Exercise Notice before signing it. Even if Plaintiff did not read it,

9

the Option Exercise Notice release would be enforceable. *See Rowdy v. K Mart Corp.*, 170 Mich. App. 54, 60 (1988)("a person cannot avoid a written contract on the ground that he did not attend to its terms, did not read it, supposed it was different in its terms, or that he believed it to be a matter of mere form.").

The Court finds the releases are unambiguous and enforceable.

**C.     Claims Barred by Tender Back Consideration**

Defendant further asserts that Plaintiff's claims are barred because he did not tender back the consideration he received for the releases before filing suit. The tender back doctrine requires that a plaintiff return all the consideration recited in a settlement agreement or release before or at the time he begins a proceeding raising a legal claim challenging the agreement. *See Stefanac v. Cranbrook Educ. Cmt'y*, 435 Mich. 155 (1990).

Plaintiff argues that the tender back rule is inapplicable. He says that, unlike here, the tender back of consideration is required only when a party seeks to avoid or rescind a contract. *See Bagel Enter., Inc. v. Baskin & Sears*, 56 Md.App. 184 (1983)(explaining that tender back consideration is only required if the plaintiff seeks to rescind the contract); *see also Taylor Group v. ANR Storage Co.*, 452 Mich. 561, 550 (1996). Plaintiff contends he seeks to enforce rather than challenge the Option Exercise Notice and, therefore, the rule is inapplicable.

This argument is unavailing. The agreement Plaintiff seeks to enforce says he owns no restricted stock. Plaintiff challenges the document on its face because he claims that even though no restricted stock is listed, he actually owned 1,198 shares. Moreover, he challenges the enforceability of the release provision contained in the

10

Option Exercise Notice.

Plaintiff contends this case is similar to *Taylor Group v. ANR Storage Co.* In *Taylor*, the plaintiffs sold mineral rights to defendants for a price calculated using the defendants' estimate of the value. 452 Mich. at 550. Later, the plaintiffs believed that they had been defrauded and filed suit. The defendants argued that the suit should be barred because the plaintiffs signed a release and failed to tender the amount received for consideration before bringing suit. Although the Court found the tender back rule inapplicable, it did so because the plaintiffs did not execute a binding release. *Id.*

The Court agrees with Defendant that this case is more like *Rinke v. Auto Moulding Co*, 226 Mich. App. 423 (1997). There the plaintiffs owned stock in a corporation which they sold at book value to the defendant. Pursuant to a redemption agreement, the plaintiffs were entitled to a higher price if the corporation sold for a higher price than negotiated within a certain period of time. *Id.* at 434. Two years later, the corporation was purchased for a share price much higher than the plaintiffs had been given. The plaintiffs sued alleging breach of fiduciary duty, fraud, innocent or negligent misrepresentation, and breach of contract. The defendants argued that the claims were barred because the plaintiffs executed a valid release and failed to tender the consideration received under the stock agreement. *Id.* at 435-438. The Michigan Court of Appeals held that the plaintiffs claims were governed by the release and, therefore, they must "tender any consideration received in exchange for a release before . . . filing a suit that contravenes that release." *Id.* at 436.

By arguing he is entitled to stock options pursuant to the Option Exercise Notice, which contains one of the release provisions, Plaintiff clearly challenges the release

11

itself. As the Michigan Supreme Court held, "Plaintiff must tender before he may even attempt to repudiate the release." *Taylor*, 452 Mich. at 567. Since Plaintiff failed to tender the consideration he received, "prior to or simultaneously with" the filing of the current suit, Plaintiff's claims are barred. *See Central Global Express, Inc. v. Silog, Inc.*, No. 233612, 2003 WL 1795553 (Mich.App. April 3, 2003)(holding that although the plaintiffs claimed breach of fiduciary duty, fraud, innocent, or negligent misrepresentation and were not attempting to disaffirm an entire settlement agreement, their actions were barred because in essence they were trying to avoid a release without tendering back the consideration).

In an attempt to regain his stock, Plaintiff claims he is entitled to rescind the Option Exercise Notice because: 1) Defendant breached the Option Exercise Notice by not re-purchasing his restricted stock; 2) the Option Exercise Notice was procured by mutual mistake; and 3) Defendant induced Plaintiff to sign the Option Exercise Notice through intentional, negligent and innocent misrepresentation. The Court, however, need not reach these issues.

Under Michigan law, a plaintiff is excused from the tender-back requirement only if he demonstrates fraud in the execution. *Stefanac*, 435 Mich. at 165 (Mich. 1990). Here, Plaintiff does not claim fraud in the execution, nor does he produce facts to establish such a claim. There is no evidence that Plaintiff did not know he was signing a release. Rather, it is undisputed that Plaintiff read the Option Exercise Notice, signed the severance package and payment letters, and did not tender back consideration before filing suit. Accordingly, his claims fail as a matter of law.

## V. CONCLUSION

The Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion for summary judgment.

**IT IS SO ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 10, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 10, 2007.

s/Carol A. Pinegar
Deputy Clerk